UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DARYL BLACHER                                              CIVIL ACTION

VERSUS

LA DEPARTMENT OF CHILDREN
AND FAMILY SERVICES, ET AL.              NO.: 14-00589-BAJ-EWD

RULING AND ORDER

This matter is before the Court on a **Motion for Summary Judgment (Doc. 23)** filed by the Louisiana Department of Children and Family Services ("Defendant"). The Court has considered the opposition filed by Daryl Blacher ("Plaintiff"). (Docs. 31, 34). Plaintiff was allowed additional time to refile summary judgment evidence into the record. (Docs. 33, 34). For the reasons stated below, Defendant's motion is **GRANTED**.

I.   BACKGROUND

Plaintiff, a 54 year old[1] African American female, attached to her complaint a charge of discrimination that she filed with the Louisiana Commission on Human Rights on April 8, 2011. (Doc. 1-2 at p. 1). Plaintiff asserted in the charge that while she was employed by Defendant, she was discriminated against based upon her race, sex, and age in violation of Title VII, the Age Discrimination in Employment Act ("ADEA"), and La.R.S. 23:301 *et seq*. (*Id*.). The charge further asserted that she was retaliated against without specifying the actions that led to such retaliation. (*Id*.). Plaintiff also attached to her complaint a right-to-sue notice from the Equal

---

[1] Plaintiff was 54 years old at the time she filed her charge of discrimination.  (Doc. 1-2 at p. 1).

1

Employment Opportunity Commission ("EEOC") that was dated June 17, 2014. (*Id.* at p. 2). The EEOC issued a determination that it was unable to conclude that Defendant violated the aforementioned statutes. (*Id.*).

After receiving her right-to-sue notice, Plaintiff filed this lawsuit *pro se*[2] on September 17, 2014,[3] asserting claims under Title VII, the ADEA, and La.R.S. §§ 23:332, 23:312, and 23:967 against Defendant and Wanda Raber. (*Id.* at pp. 5—7). Plaintiff's complaint is disorganized and difficult to follow. Relative to her Title VII claims, Plaintiff asserts in her complaint that she was "unlawfully discharged by Defendant because of her gender, age, and/or race," that her position "was not reviewed on the basis of a reduction in force," and that she "was not offered or afforded any alternative positions . . . while white employees were offered better positions." (Doc. 1 at ¶¶ 21—23). Relative to her state law claims, Plaintiff asserts in her complaint that she "was a victim of unsatisfactory behavior within the workplace," that she suffered from "harassment and excessive bullying," that she was "abused with false accusations and public ridicule," and that she was ultimately "discharged" because of her "age, race, and/or gender as well as for retaliation" while "employees with other cultural backgrounds were allowed to remain in her department with less experience and credentials." (*Id.* at ¶¶ 27—29).

---

[2] After two unsuccessful attempts for failure to follow the local rules, the Court granted a motion for Plaintiff's counsel to enroll *pro hoc vice* on February 13, 2015. (Docs. 14, 16, 20).

[3] Plaintiff filed her complaint 92 days after the EEOC mailed her right-to-sue notice. The Court accepts that Plaintiff timely filed her complaint within ninety days of receipt of this notice in the mail. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002).

The Court gleans additional background information from Defendant's Statement of Undisputed Facts, (Doc. 23-2), which was largely undisputed by Plaintiff, (Doc. 31-1).[4] Plaintiff began working for Defendant in August of 2009 as a probationary employee under the direct supervision of Marie Brown Mercadel. (Doc. 23-2 at ¶¶ 1—3). Plaintiff was hired as a Program Manager II in the Neighborhood Policy initiative, which was not a core serviced provided by Defendant. (*Id*. at ¶¶ 1, 6). As such, this program was subject to abolishment during a budget crisis. (*Id*. at ¶ 6). In both 2010 and 2011, Defendant faced several budget cuts and underwent reorganizations that resulted in consolidations and a reduction in the manager-to-staff ratio of its workforce. (*Id*. at ¶¶ 7—8).

As a consequence of one such consolidation, Plaintiff's work unit was dissolved and consolidated with another department, and she thereafter took a voluntary demotion. (*Id*. at ¶ 9—10). After this consolidation, Plaintiff was under the supervision of Wayne Williams, who decided to keep Plaintiff on probationary status for six months because he was not familiar with her work. (*Id*. at ¶ 12). In December 2010, all of Defendant's employees who did not have permanent status had their probation period extended for twenty-four months. (*Id*. at ¶ 13). In response to additional budget cuts, Defendant was required to lay off employees as part of a reduction in its workforce. (*Id*. at ¶¶ 15—19). Plaintiff was laid off pursuant to this

---

[4] Plaintiff, in opposing Defendant's motion, included a brief statement of material facts to which she claims that there exists a genuine issue to be tried. (Doc. 31-1). Plaintiff did not, however, controvert many of the facts relied upon by Defendant in its statement of undisputed facts (Doc. 23-2), which properly cited to evidence in the record. Under LR 56(b), all material facts set forth in Defendant's statement of uncontested that are uncontroverted are deemed admitted. *Carter v. Benjamin*, 13-cv-00278-BAJ-RLB, 2015 WL 2448479, at *1 n.1 (M.D. La. May 20, 2015).

reduction. (*Id.* at ¶ 19). Because Plaintiff was a probationary employee when she was terminated, she was not placed on a department preferred re-employement list. (*Id.* at ¶¶ 21—22). Plaintiff was not rehired for a new position that required applicants to have permanent status. (*Id.* at ¶¶ 23—26).

On February 11, 2015, the Court entered an Order granting an unopposed motion to dismiss filed by Defendant and its employee, Wanda Raber. (Docs. 6, 18). The Order dismissed Wanda Raber as well as Plaintiff's claim against Defendant arising under the AEDA. (*Id.*). Defendant filed the instant motion for summary judgment on January 22, 2016, seeking judgment as a matter of law on Plaintiff's remaining claims.

## II.   SUMMARY JUDGMENT STANDARD

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In determining whether the movant is entitled to summary judgment, the court views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Hous. Indep. Sch. Dist.,* 113 F.3d 528, 533 (5th Cir. 1997).

After a proper motion for summary judgment is made, the non-movant "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal citations omitted). At this stage, the court does not evaluate the credibility of witnesses, weigh the evidence, or resolve

factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied,* 502 U.S. 1059 (1992). However, if "the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor," the motion for summary judgment must be denied. *Id.* at 1263.

On the other hand, the non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (internal quotations omitted). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In other words, summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer,* 455 F.2d 1236, 1241 (5th Cir. 1972).

## III.   DISCUSSION

As previously noted, Plaintiff's complaint is disorganized and fails to clearly identify her claims, set forth their elements, or link the facts that apply thereto. Because Plaintiff filed her complaint *pro se*, the Court affords it liberal construction. *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993). The Court's willingness in this regard does not extend to Plaintiff's opposition, which was submitted by subsequently

5

retained counsel. A review of Plaintiff's opposition tasks the Court with analyzing vague and conclusory statements like: "Defendant had legitimate motives for discriminatory reasons for its actions" or "[c]ontrary to Defendant's argument, Plaintiff was laid off for discriminatory reasons. Plaintiff was demoted for consolidated reasons. However, the process of her getting laid off was discriminatory." (Doc. 31 at pp. 7, 8). At the very least, it is difficult to reconcile Plaintiff's representation that she was "laid off" with her representation that she was "constructively discharged."[5] (*Id.* at pp. 5, 7).

## A. Title VII Disparate treatment

### i. Demotion and termination

For the purposes of this ruling only, the Court assumes that Plaintiff can establish a prima facie case of disparate treatment based on race and/or sex discrimination under Title VII. Operating under this assumption, the Court agrees with Defendant that Plaintiff has failed to demonstrate that its reasons for demoting or terminating her were pretext for discrimination. *See Crawford v. Formosa Plastics Corp., Louisian*a, 234 F.3d 899, 902 (5th Cir. 2000). A consolidation or reduction in workforce is a legitimate, nondiscriminatory reason for an adverse employment action. *See E.E.O.C. v. Texas Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996). Therefore, to survive summary judgment, Plaintiff was required to present direct or

---

[5] A constructive discharge occurs "when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Morris v. Schroder Capital Mgmt. Int'l*, 481 F.3d 86, 88 (2d Cir. 2007). Thus, Plaintiff cannot have been both constructively discharged and laid off pursuant to direct action from Defendant to terminate her employment.

substantial circumstantial evidence of discrimination to create a genuine dispute of material fact as to the falsity of Defendant's reason for her demotion and/or termination. *McCoy v. City of Shreveport*, 492 F.3d 551 (5th Cir. 2007). The Court finds that plaintiff has not met her burden.[6]

Plaintiff does not controvert Defendant's assertions that she accepted a voluntary demotion and was later terminated as a result of budget cuts that precipitated a workforce consolidation and reduction. (Doc. 23-2 at ¶¶ 7—10, 15—20; Doc. 31-1). Plaintiff has not drawn the Court's attention to any facts indicating that improper considerations, namely race and sex, motivated Defendant's decision to include Plaintiff in its workforce consolidation and reduction.[7] *See Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 652—55 (5th Cir. 2004). Furthermore, Plaintiff does not dispute Defendant's assertion that its reduction in workforce did not result in a disparate impact that adversely affected females or African-Americans. (Doc. 23-7; Doc. 31). Plaintiff's claim that she was unlawfully demoted and/or terminated rests primarily upon her subjective beliefs, along with unsupported and conclusory allegations, which are an insufficient response to Defendant's motion. *Kennerson v. Guidry*, 135 F. App'x 639, 641 (5th Cir. 2005).

---

[6] Although not at all dispositive, the Court notes that Plaintiff cites record evidence only ten times in her opposition to Defendant's motion. (Doc. 31).

[7] Plaintiff also appears to concede in her opposition that "[she] was demoted for consolidated reasons." [sic]. (Doc. 31 at p. 8).

ii.    Denial of permanent status

Plaintiff vaguely pled that she was denied permanent status because of her race and/or sex. (Doc. 31 at p. 8). Assuming again for the purposes of this ruling only that Plaintiff can establish her prima facie case, which in this instance presupposes that such a denial fits within the meaning of an "adverse action" under Title VII, Plaintiff has again failed to meet her burden of demonstrating pretext.

Defendant asserts in its statement of undisputed facts that Plaintiff was denied permanent status because a new supervisor, Wayne Williams, was unfamiliar with her work history and capabilities. (Doc. 23-2 at ¶¶ 12—14). Shortly after the arrival of Mr. Williams, Defendant further asserts that its Secretary, Ruth Johnson, mandated that *all* probationary employees, including Plaintiff, complete at least two years of work with Defendant before becoming eligible for permanent status. (*Id.*; Doc. 23-19). Ms. Johnson states that this directive was issued in anticipation of impending reorganizations and layoffs. (Doc. 23-19). Plaintiff did not controvert Defendant's statements of undisputed facts in this regard. (Doc. 31-1). Plaintiff's opposition otherwise fails to address Defendant's proffered reasons for denying her permanent status and does not draw the Court's attention to substantial circumstantial evidence to demonstrate their falsity, *i.e.* that discriminatory animus was the actual reason she was denied permanent status. (Doc. 31).

8

iii.    Decision not to rehire

Although not clear from her complaint, Plaintiff also asserts that shortly after her termination, she was denied a new position because of her race and/or gender.[8] Plaintiff has failed to show, however, that she was qualified for the position for which she applied, which is an element of her prima facie case. *See Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994). Defendant, on the other hand, asserts that Plaintiff was not qualified for the new position because, *inter alia*, she was not a permanent status employee and did not have the requisite years of experience. (Doc. 23-2 at ¶¶ 23—26; Doc. 23-20 at p. 4). Plaintiff has not offered factual support to create a genuine dispute of fact on this issue, and she therefore cannot meet her burden of establishing her prima facie case with respect to this particular claim.

**B. Title VII hostile work environment**

The Court also agrees with Defendant that Plaintiff has not created a genuine dispute of material fact that she was the victim of a hostile work environment. "Whether an environment is hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *McCoy*, 492 F.3d at 558. The complained of conduct must explicitly or implicitly relate to the victim's status in a protected class. *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 326 (5th Cir. 2004). Furthermore, "[t]o survive

---

[8] This allegation is set forth more clearly in Plaintiff's charge of discrimination to the Louisiana Commission on Human Rights. (Doc. 1-2 at p. 1).

summary judgment, the harassment must be 'so severe and pervasive that it destroys a protected class member's opportunity to succeed in the work place.'" *Id.* (citing *Shepherd v. Comptroller of Pub. Accounts*, 138 F.3d 871, 874 (5th Cir. 1999)).

While Plaintiff alleges that she was harassed and bullied, her deposition testimony[9] reveals that she experienced nothing more than a few isolated incidents that she perceived as offensive or had difficulty recounting.[10] (Doc. 23-4 at pp. 10, 11, 13—14, 16—22, 24). Plaintiff also assigns weight to the declaration of her former supervisor, Marie Brown Mercadel, an African-American female, who stated that Defendant's former Secretary, Kristy Nichols, was purportedly authoritative and critical of *all* of her employees. (Doc. 23-11 at p. 2; Doc. 31 at p. 4). Although Ms. Mercadel stated that few workers met Ms. Nichols's exacting standards, she also noted that she did "not believe Ms. Nichols treated people differently based on their race." (*Id.*). The Court is mindful that many bosses are harsh, unjust, and rude;

---

[9] The court was only provided excerpts of Plaintiff's deposition testimony, which was attached as an exhibit to Defendant's motion for summary judgment. Plaintiff relies on the same excerpts. (Doc. 31-2).

[10] For example, Plaintiff testified that she was sent a "rude" and "nasty" email from a co-worker suggesting that she was not performing a task that she was directed to perform. (Doc. 23-4 at p. 10). Plaintiff does not assert, however, that this email contained insensitive remarks about her sex or race, or that it was directed to her because of her race or sex. (*Id.* at pp. 10, 17). Plaintiff also makes vague assertions that she was followed around the office by Trey Williams, but she only recalled once instance of such behavior. (*Id.* at pp. 11, 14). When asked if she was followed around because of her race or sex, Plaintiff testified "I don't know" and "I'm not sure about that." (*Id.* at pp. 14—15). Plaintiff further asserted that a secretary told her that one co-employee made "nasty" remarks about her, but Plaintiff did not know what the remarks were about. (*Id.* at p. 13). Plaintiff testified that a co-worker made racist "off-the wall comments and jokes," but she could only described one particular comment in which the co-worker told Ms. Mercadel that she had a hair style similar to singer Mary J. Blige. (*Id.* at pp. 17—18). Ms. Mercadel has stated in an affidavit that she did not find this comment racist and that she was not offended by it. (Doc. 23-11 at p. 2). As a last example, Plaintiff asserts that on "three different occasions" two employees would sing the lyrics to songs by African American artists while entering staff meetings. (Doc. 23-4 at p. 19). Plaintiff considered these songs, along with the comment about Mary J. Blige, to be "stereotypical and bias, racially prejudice." [sic] (*Id.* at 19—20).

hostile work environment claims, however, "exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground for discrimination. Otherwise, the federal courts will become a court of personnel appeal." *Bryant v. Brownlee*, 265 F. Supp. 2d 52, 63 (D.D.C. 2003) (quoting *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002)).

When viewed in the context of a period of employment that spanned approximately twenty months, the Court finds that the incidents relied upon by Plaintiff do not give rise to severe or pervasive harassment that was based upon her race and/or sex. *See Gibson v. Verizon Servs. Org., Inc.*, 498 F. App'x 391, 394 (5th Cir. 2012). Accordingly, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

## C. Title VII retaliation

Plaintiff's retaliation claim is likewise devoid of factual support. "To establish a prima facie case of retaliation, [Plaintiff] must show that: (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the materially adverse action." *McCoy*, 492 F.3d at 557. Plaintiff does not identify the protected activity she engaged in prior to suffering any adverse employment action. For this reason alone, Defendant is entitled to summary judgment on Plaintiff's retaliation claim under Title VII.

11

### D. State law claims

Louisiana courts look to federal employment discrimination law when interpreting Louisiana employment laws. *See Baker v. FedEx Ground Package System, Inc.*, 278 F. App'x 322, 327 (5th Cir. 2008) (applying the *McDonnell Douglas* burden-shifting framework to claims under §§ 23:301 and 23:967 and finding that plaintiff did not present substantial circumstantial evidence of pretext to survive summary judgment). Considering the foregoing analysis, Defendant is entitled to summary judgment on Plaintiff's state law employment discrimination and retaliation claims. *Id.*; *Stevenson v. Williamson*, 547 F. Supp. 2d 544, 557 (M.D. La. 2008), *aff'd*, 324 F. App'x 422 (5th Cir. 2009) (finding that "the federal analysis applicable to plaintiff's Title VII claim also governs plaintiff's state law claims under La. R.S. 23:967").

### IV.   Conclusion

Accordingly,

The **Motion for Summary Judgment (Doc. 23)** filed by Defendant is hereby **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

Baton Rouge, Louisiana, this 24th day of May, 2016.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

12